UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| G.B. *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, <br><br> Defendant. | Civil Action No. 15-27 (CKK) |

MEMORANDUM OPINION
(January 14, 2015)

Plaintiffs Joseph Brown and Jennifer Brown filed suit as the parents and next friends of their minor daughter, G.B., against the District of Columbia ("the District"). G.B. has been identified as eligible for special education and related services pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"),[1] 20 U.S.C. § 1400 *et seq*. This suit invokes the IDEA's "stay-put" provision and seeks to force the District to fund G.B.'s placement in a non-public educational program while the challenge to G.B.'s December 8, 2014, Individualized Education Program ("IEP") is under review by an administrative hearing officer. Concurrently with the Complaint, Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO") and a Motion for Preliminary Injunction. During a telephonic conference call with the Court, the parties agreed to a briefing schedule for Plaintiffs' TRO request. Minute Order (Jan. 8, 2015).

---

[1] The IDEA was re-authorized and re-codified pursuant to the Individuals with Disabilities Education Improvement Act in 2004, Pub. L. No. 108–446, 118 Stat. 2647 (2004). The short title of the re-authorized and amended provisions remains the Individuals with Disabilities Education Act. *See* Pub. L. No. 108–446, § 101; 118 Stat. at 2647; 20 U.S.C. § 1400 (2006). Accordingly, the Court refers to the amended Act herein as the IDEA.

Plaintiffs' Motion for a TRO is now fully briefed.[2] After considering the parties' briefs, the accompanying exhibits, and the applicable authorities, the Court finds that Plaintiffs are entitled to a "stay-put" injunction. Accordingly, Plaintiffs' Motion for Temporary Restraining Order is GRANTED. As the grounds for Plaintiffs' request for a Preliminary Injunction are identical to the grounds for Plaintiffs' TRO request, the Court also GRANTS Plaintiffs' Motion for Preliminary Injunction, ECF No. [3], during the pendency of the administrative challenge.

## I.   BACKGROUND

### A. Statutory Framework

The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Once a child is identified as disabled, the school district within which the child resides must convene a meeting of a multi-disciplinary team to develop an individualized education program ("IEP") for the student. *See* § 1414. "The IEP is in brief a comprehensive statement of the educational needs of a handicapped child and the specially designed instruction and related services to be employed to meet those needs." *Leonard v. McKenzie,* 869 F.2d 1558, 1560 n.1 (D.C. Cir. 1989) (quoting *Sch. Comm. of the Town of Burlington v. Dept. of Educ.,* 471 U.S. 359, 368 (1985)). As such, it represents the "*modus operandi*" of the IDEA. *Id.* The IEP must be formulated in accordance with the terms of the IDEA and "should be reasonably calculated to enable the child to achieve passing marks

---

[2] Plaintiffs' Motion for a Temporary Restraining Order ("Pls.' TRO"), ECF No. [2]; Defendant's Opposition to Plaintiffs' Motion for a Temporary Restraining Order ("Def.'s Opp'n"), ECF No. [7]; Plaintiffs' Reply to Opposition to Motion for Temporary Restraining Order ("Pls.' Reply"), ECF No. [8].

and advance from grade to grade." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 204 (1982). Once the IEP is developed, the school system must provide an appropriate educational placement that comports with the IEP. *Alston v. District of Columbia,* 439 F.Supp.2d 86, 90 (D.D.C. 2006). "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." *Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516, 519 (D.C. Cir. 2005) (citation and internal editing omitted).

If the parent of a child receiving services pursuant to the IDEA believes his or her child's IEP or school placement is inadequate, the parent may file a "due process complaint." *E.g.,* 20 U.S.C. § 1415(b)(7)(A). The IDEA further provides that

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

*Id.* § 1415(j). Known as the "stay-put provision," this section mandates that once a parent files a due process complaint, "the child shall remain in the interim alternative educational setting pending the decision of the hearing officer . . . unless the parent and the State or local educational agency agree otherwise." *Id.* § 1415(k)(4); *accord* 34 C.F.R. § 300.518(a). The purpose of this provision is to prohibit "school officials from removing a child from the regular public school classroom over the parents' objection pending completion of the review proceedings." *Honig v. Doe,* 484 U.S. 305, 327 (1988).

## B. Factual Background

The following facts are not disputed by the parties. G.B. is a thirteen year-old resident of

the District of Columbia who has been identified as a student with disabilities who is entitled to receive special education and related services. Compl. ¶¶ 68, 69, 72. On October 16, 2013, the District developed an IEP designed to provide G.B. with thirty-one hours of special education instruction outside of the general education setting and one hour of behavioral support services outside of the general education setting for a total of thirty-two hours of services. Def.'s Opp'n at 1; Compl. ¶ 73. On December 13, 2013, the District reconvened the IEP team and developed another IEP that again provided for thirty-one hours of special education instruction and one hour of behavioral support services outside of the general education setting. Def.'s Opp'n at 1; Compl. ¶ 74. Both IEPs "anticipated that [G.B.] would receive her services at a [District of Columbia Public Schools ("DCPS")] school that had a fully separate special education setting, including separate entrance and lunchroom for special education students." Def.'s Opp'n at 1.

The District identified the location for the provision of services as Hart Middle School ("Hart") and G.B. was placed at Hart. *Id.* at 2; Compl. ¶ 76. However, Hart could only provide G.B. twenty-seven and a half hours of services per school week because it does not have a fully separate special education setting. *Id.* In April 2014, G.B. was raped by two non-disabled students while transitioning to her bus at Hart. Compl. ¶ 78; Pls.' TRO at 3, 8; Pls.' Ex. 4 (Children's Hospital Medical Records). On December 8, 2014, the District reviewed and revised G.B.'s IEP to provide for twenty-seven and a half hours of specialized instruction and related services. Def.'s Opp'n at 2; Compl. ¶¶ 97, 101. The District identified Cardozo High School as the location for provision of G.B.'s IEP services. Def.'s Opp'n at 2; Compl. ¶ 102. "Due to the structure of Cardozo, G.B. would normally have transitions and lunch with nondisabled peers." Def.'s Opp'n at 2.

On December 31, 2014, Plaintiffs filed an administrative due process complaint before

the District's Office of the State Superintendent of Education Office of Dispute Resolution challenging, among other things, the December 8, 2014, IEP, and placement at Cardozo High School. Def.'s Opp'n at 2; Compl. ¶¶ 112-13. The administrative hearing officer's decision is due by March 16, 2015. Def.'s Opp'n at 1 (citing 34 C.F.R. § 300.515). On January 8, 2015, Plaintiffs filed the present action invoking the IDEA's "stay-put provision" and requested that the District fund G.B.'s placement in a separate non-public special education school while their due process complaint is adjudicated.

## II.   DISCUSSION

Since the "stay-put provision" imposes an automatic statutory injunction, the traditional four-part test for an injunction does not apply. *D.K. ex rel. Klein v. District of Columbia*, 962 F.Supp.2d 227, 232 (D.D.C. 2013); *Alston*, 439 F.Supp.2d at 91-92. Instead, the Court must answer two questions to determine whether Plaintiffs are entitled to a stay-put injunction: (1) what was G.B.'s "then-current educational placement" at the time the due process complaint was filed?; and (2) has the District proposed a "fundamental change" in G.B.'s educational program? *Johnson v. District of Columbia*, 839 F.Supp.2d 176, 177 (D.D.C. 2012); *see Laster v. District of Columbia,* 394 F.Supp.2d 60, 64 (D.D.C. 2005) (citing *Lunceford v. District of Columbia Bd. of Educ.,* 745 F.2d 1577, 1582 (D.C. Cir. 1984)) (A court may grant a stay put injunction if the school system proposes "a fundamental change in, or elimination of, a basic element of the [then-current education placement].").

### A. G.B.'s "Then-Current Educational Placement"

Typically, "[t]he dispositive factor in deciding a child's 'current educational placement' should be the [IEP] . . . actually functioning when the 'stay put' is invoked." *Johnson*, 839 F.Supp.2d at 177 (quoting *Drinker ex rel. Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d

5

Cir. 1996)). However, when a plaintiff has challenged the student's educational placement in place at the time the "stay-put provision" is invoked, courts traditionally treat the IEP in place prior to the challenged IEP as the controlling IEP for purposes of the "stay-put provision." *See Laster*, 394 F.Supp.2d at 65 (finding the student's then-current educational placement to be the 2004-2005 IEP because the student's guardian did not consent to the 2005-2006 IEP); *Spilsbury v. District of Columbia*, 307 F.Supp.2d 22, 25-26 (D.D.C. 2004) (holding that the IEP in place for the students prior to the challenged IEP controlled what services the students were required to receive during the pendency of the students' challenge to the revised IEP).

Here, the parties do not dispute that G.B.'s December 13, 2013, IEP is the "then-current educational placement" for purposes of the "stay-put provision." *See* Pls.' TRO at 8; Def.'s Opp'n at 2. The December 2013 IEP provided for thirty-one hours per week of specialized instruction "in an out of general education setting." Pls.' Ex. 3 (Dec. 2013 IEP), at 11. It also provided for two hundred and forty minutes per month of Behavioral Support Services "in an out of general education setting." *Id.* Behavioral Support Services were to "include counseling, behavior management and consultation with teacher and parent to ensure that interventions are consistently implemented in the school setting." *Id.* at 9.[3] As Defendant explains, "it was anticipated that the student would receive her services at a DCPS school that had a fully separate special education setting, including separate entrance and lunchroom for special education

---

[3] The Court has placed G.B.'s IEPs under seal along with all of the exhibits Plaintiffs filed in this case because they contain sensitive identifying information about G.B. and her disability. The Court has directly quoted language from G.B.'s December 2013 IEP which is under seal. However, the quoted language contains only a generic description of the services G.B. was to receive pursuant to the IEP and is akin to the information openly discussed by the parties in their briefing about the number of hours of services and types of services set forth in G.B.'s IEPs. Accordingly, the Court finds there is no reason to redact the language from G.B.'s December 2013 IEP that the Court has included in this Memorandum Opinion.

students." Def.'s Opp'n at 1. The December 2013 IEP did not require that G.B. receive the support of a dedicated aide. Pls.' Ex. 3 (Dec. 2013 IEP), at 10.

Having identified G.B.'s "then-current educational placement," the Court must now evaluate whether the District has proposed a fundamental change in G.B.'s educational placement such that G.B. is entitled to be placed in her "then-current educational placement" pending the resolution of Plaintiffs' challenge to this proposed change.

**B. Fundamental Change**

At the outset, the Court notes that in response to Plaintiffs' Motion for a TRO, Defendant proposed several modifications to G.B.'s challenged December 2014 IEP in order "[t]o comply with the maintenance of placement provision." Def.'s Opp'n at 2-3. Specifically, Defendant proposed that G.B. "enjoy her lunch in a separate setting, which DCPS will provide, that will be separate from the general education population and monitored by appropriate school personnel." *Id.* at 3. Defendant also proposed that it "provide G.B. with a dedicated aide who will accompany her in her transitions between special education classes." *Id.* Accordingly, the change that Defendant is ultimately proposing in G.B.'s educational placement consists of a reduction from a total of thirty-two hours of specialized instruction and related services in a fully separate special education setting to twenty-seven and a half hours of specialized instruction and related services with lunch in a setting separate from the general education population and monitored by school personnel, and a dedicated aide to accompany G.B. in her transitions between special education classes. Defendant argues that this newly proposed educational placement "will not be a fundamental deviation from the December 13, 2013 IEP" as "the only *de minimis* difference [are] transitions among nondisabled peers *with* a dedicated aide." *Id.* (emphasis in original).

To be entitled to a "stay-put" injunction, Plaintiffs must identify a "change in the 'general educational program in which a child . . . is enrolled, rather than mere variations in the program itself.' " *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984) (quoting *Concerned Parents v. New York City Board of Education,* 629 F.2d 751 (2d Cir. 1980)); *see also id.* ("[A]ppellee must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program in order for the change to qualify as a change in educational placement."). Based on this standard, the Court agrees with Plaintiffs that Defendant's proposed change in educational placement—even with the recently proposed modifications—constitutes a "fundamental change" from the December 2013 IEP—G.B.'s "then-current educational placement."

G.B.'s December 2013 IEP contemplated *thirty-one hours* of special education instruction and *one hour* of behavioral support services in a *fully separate special education setting*. Defendant's proposed educational placement for G.B. contemplates (1) twenty-seven and a half hours of specialized instruction and related services, (2) G.B.'s exposure to her non-disabled peers, and (3) lunch segregated from her peers and under adult supervision. The Court finds that these three changes represent a fundamental alteration to G.B.'s educational placement.

First, under Defendant's proposed educational placement, G.B. will receive four and a half fewer hours of services per week because G.B. will not receive services during lunch or transition periods as contemplated in her December 2013 IEP. Defendant appears to propose that this gap in services can be filled by providing G.B. a dedicated aide to accompany her during transition periods and "appropriate school personnel" to monitor her during lunch. However, Defendant offers no explanation as to how these modifications match the services

provided for in G.B.'s December 2013 IEP; specifically, whether the dedicated aide or school monitor would provide the behavioral support services that the December 2013 IEP contemplated G.B. would receive during these periods. The Court finds that neither the dedicated aide nor the school monitor is an adequate substitute for the services that the December 2013 IEP contemplated G.B. would receive. As presented by Defendant, the dedicated aide is intended to simply "accompany" G.B. during her transitions amongst her nondisabled peers throughout the school day and the school monitor is intended to simply "monitor" G.B. during lunch. *See* Def.'s Opp'n at 3. Moreover, it appears that neither individual can provide the level of services required by G.B.'s December 2013 IEP because the IDEA does not permit paraprofessionals to provide specialized instruction or related services without the supervision of a special education teacher. *See* Assistance to States for the Education of Children With Disabilities and Preschool Grants for Children with Disabilities, 71 Fed. Reg. 46612 (Aug. 14, 2006) (the IDEA "should not be construed to permit or encourage the use of paraprofessionals as a replacement for teachers or related services providers who meet State qualification standards . . . these aides provide special education and related services to children with disabilities only under the supervision of special education and related services personnel."). Indeed, G.B.'s December 2013 IEP, which contemplated a total of thirty-two hours of services entirely outside of the general education setting, specifically stated that a dedicated aide was not required, strongly suggesting that a dedicated aide is not an individual capable of providing the services G.B. requires during transition and lunch periods. Accordingly, the presence of a dedicated aide or school monitor during transitions and lunch is not a substitute for the "counseling and behavior management [instruction G.B. is to receive] when interacting with her peers" during transitions and lunch per G.B.'s December 2013 IEP. Pls.' Reply at 4-5.

9

Defendant's proposed educational placement represents a substantial reduction in services.

In addition, the District's proposed educational placement would expose G.B. to her non-disabled peers during transitions in the school day. The December 2013 IEP, by contrast, purposefully contemplates that G.B. would receive her services in a *fully* separate setting for disabled students. *See Johnson v. District of Columbia*, 962 F.Supp.2d 263, 269 (D.D.C. 2013) (crediting testimony by a DCPS employee that "when individuals create IEPs that are 32 hours, what they are actually trying to do is ensure that [the disabled students] do not engage with their non-disabled peers during non-instructional time[,] which include[s] lunch and transition."). The Court finds Defendant's attempt to remedy this difference by assigning G.B. a dedicated aide to accompany her during transitions amongst non-disabled students unavailing. A fundamental aspect of G.B.'s December 2013 IEP was the requirement that all of G.B.'s services be provided to her outside of the general education setting to "prevent G.B. from being exposed to her non-disabled peers at any point in time during the day." Pl.'s Reply at 8. Even with a dedicated aide to accompany her, G.B. will still be exposed to her non-disabled peers. And, as previously discussed, the dedicated aide will not be able to provide G.B. with the requisite services to help G.B. navigate that exposure during these transition periods.[4]

Finally, beyond resulting in a reduction of services, the Court finds Defendant's proposal that G.B. spend lunch "separate from the general education population and monitored by appropriate school personnel" does not bring Defendant's proposed educational placement closer

---

[4] Plaintiffs also argue that assigning G.B. a dedicated aide to accompany her during her transitions amongst the general education population does not ameliorate her exposure to that population because G.B. had been assigned a dedicated aide at Hart the day she was raped by two non-disabled students while transitioning to the bus. *See* Pls.' TRO at 8; Pls.' Ex. 13 at 3. However, it is unclear to the Court from the parties' briefs whether the dedicated aide at Hart was assigned to accompany G.B. during her *transitions* at Hart.

to G.B.'s December 2013 IEP, but instead makes the proposed placement more restrictive. While G.B.'s December 2013 IEP requires that she be separated from her non-disabled peers at lunch, it does not bar her from enjoying lunch with her disabled peers. Defendant's proposed educational placement would appear to require G.B. to eat lunch alone without any of her peers because, "[d]ue to the structure of Cardozo," disabled students "normally" eat lunch with their nondisabled peers in the general education setting. Def.'s Opp'n at 2.

In *Lunceford*, the Court of Appeals for the District of Columbia Circuit found that "a move from a 'mainstream' program to one consisting only of handicapped students would constitute a change in educational placement; a move from one mainstream program to another, with the elimination of a theater arts class, would not be such a change." 745 F.2d at 1582. Here, the Court finds that the four and a half hour per week reduction in important specialized instruction and behavioral support services, the exposure to nondisabled students during transition periods throughout the day, and the segregated lunch setting represent far more than mere programmatic variations in G.B.'s educational placement. Even with Defendant's recently proposed modifications to the challenged December 2014 IEP, the District is seeking to place G.B. in a more mainstream setting than is clearly contemplated by G.B.'s December 2013 IEP— her "then-current educational placement." Accordingly, the Court finds that Defendant's proposed educational placement represents a fundamental change in the structure of and quantity and quality of services provided by G.B.'s educational placement entitling Plaintiffs to a "stay-put" injunction.

### III.    CONCLUSION

For the foregoing reasons, the Court shall GRANT Plaintiffs' Motion for a Temporary Restraining Order. Accordingly, if none of the DCPS schools can provide thirty-two hours of

special education and related services as required by G.B.'s December 2013 IEP, as Plaintiff contends, DCPS must provide G.B. with placement in a similar program during the pendency of administrative proceedings. *Knight v. District of Columbia,* 877 F.2d 1025, 1029 (D.C.Cir.1989); *McKenzie v. Smith,* 771 F.2d 1527, 1533 (D.C. Cir. 1985); *Block v. District of Columbia,* 748 F.Supp. 891, 898 n.9 (D.D.C.1990). Plaintiffs have suggested two non-public special education schools that appear to meet the requirements of G.B.'s December 2013 IEP: Frost School and Accotink Academy. Pls.' TRO at 10. The Court will give Defendant the opportunity to file a Notice with the Court by no later than January 16, 2015, indicating whether there is a DCPS school that can accommodate G.B.'s December 2013 IEP or whether G.B. will be placed in a non-public special education school and the date on which G.B. will be placed in a proper educational placement. The Court expects G.B. to be placed in a proper educational placement forthwith as she is presently at home and not receiving any educational benefits.

Because Plaintiffs' Motion for a Preliminary Injunction is identical to Plaintiffs' Motion for a TRO and because a TRO will expire after fourteen days, *see* Fed. R. Civ. P. 65(b)(2)—long before the administrative hearing officer will have rendered a decision regarding the challenged 2014 IEP—the Court shall also GRANT Plaintiffs' Motion for a Preliminary Injunction pending the resolution of the administrative due process hearing. Nevertheless, the Court shall give Defendant the opportunity to object to the Court's treatment of the Motion for Preliminary Injunction by no later than January 20, 2015, if Defendant believes there is a reason that Plaintiffs' Motion for a Preliminary Injunction should not be treated the same as Plaintiffs' Motion for a TRO.

//

//

An appropriate Order accompanies this Memorandum Opinion.

                                                                       */s/*
                                           **COLLEEN KOLLAR-KOTELLY**
                                           UNITED STATES DISTRICT JUDGE